THE STATE, DEFENDANT IN ERROR, v. WILLIAM ZEILMAN, PLAINTIFF IN ERROR.

Submitted March 21, 1907—Decided June 10, 1907.

1. Under the Criminal Procedure act (*Pamph. L.* 1898, *p.* 914, § 135), a bill of exceptions must contain so much of the evidence as may be necessary to present the questions of law upon which exceptions were taken.
2. The function of a bill of exceptions is to point out to a court of review an alleged erroneous ruling by the trial judge, adhered to by him after his attention was called to the matter by an exception taken at the time.
3. The bills of exceptions in the present case *held* insufficient to show what legal points were decided by the trial judge adverse to the contention of the plaintiff in error.
4. Upon examining the unauthenticated report of trial printed with the bills of exceptions herein, for the purpose of determining whether a motion to dismiss the writ of error ought to be entertained, to enable plaintiff in error to apply to the trial court to resettle the bills of exceptions—*Held*, that the case shows no reasonable ground for exercising the discretion of the court to permit a dismissal of the writ of error for this purpose.

---

On error to Hudson Quarter Sessions.

Before Justices FORT, HENDRICKSON and PITNEY.

For the plaintiff in error, *Hudspeth & Carey.*

For the defendant in error, *William H. Speer,* prosecutor of the pleas.

The opinion of the court was delivered by

PITNEY, J. The defendant (now plaintiff in error) was indicted jointly with one Charles Kraemer upon two counts, one charging a rape and the other an assault and battery upon a woman named A. B. Defendant was put upon trial alone, was convicted of assault and battery only, and was sentenced to serve a term in the state prison and to pay a money fine. To review this conviction the present writ of error was sued out. Reversal is prayed because of alleged trial errors that are said to be evidenced by bills of exceptions allowed pursuant to section 135 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 914), defendant not having seen fit to avail himself of the more extensive mode of review permitted by section 136 of the same act.

In the printed case as submitted to this court upon the argument there appears what may be assumed to be a stenographic report of the proceedings at the trial. But this report is not authenticated in anywise by the trial judge either by such a certificate as is usual where the practice under section 136 is resorted to, or by any reference contained in any of the bills of exceptions.

The bills of exceptions themselves are unusual in form, if not unprecedented, and so far as we are able to discover they do not in any instance disclose what question of law was presented to the trial judge, and by him decided, upon which exception was taken.

Section 135 of the Criminal Procedure act reads as follows: "If, on the trial of any indictment, any exception shall be taken to any decision of the court during the trial to the prejudice or injury of any defendant, it shall be the duty of the judge to settle a bill of such exceptions, and to sign and seal the said bill, to the end that the same be returned with a writ of error to the court having cognizance thereof; and the bill of exceptions taken in any case shall contain only so much of the evidence as may be necessary to present the questions of law upon which exceptions were taken at the trial, and it shall be the duty of the court or judge upon the settlement of the

bill to strike out of the same all the evidence and other matters which shall not have been necessarily inserted."

The plain requirement is that the bill of exceptions shall contain so much of the evidence (and no more) as may be necessary to present the questions of law upon which exceptions were taken.

The bills of exceptions that are returned with the writ of error herein show simply that upon cross-examination of certain of the state's witnesses questions were asked by defendant's counsel, which, upon objection by the prosecutor of the pleas, were overruled as improper cross-examination, as being immaterial, or for other reasons; that a question asked of one of the defendant's witnesses upon direct examination was overruled; that a question asked by the prosecutor on cross-examination of another of defendant's witnesses was admitted notwithstanding the objection of defendant's counsel; that a question asked by the prosecutor upon direct examination of one of the state's witnesses was admitted, notwithstanding the objection of defendant's counsel that the same was irrelevant, immaterial and incompetent; that the trial judge in his charge to the jury made certain references to and comments upon the evidence to which exception was taken; and that a general exception was taken to the entire charge of the judge to the jury.

The bills of exceptions contain no reference to the context, nor any recital to show that the questions overruled were material or proper, that the questions admitted over defendant's objection were immaterial, incompetent or improper, or that the exceptions taken to the charge were in any respect well founded.

The function of a bill of exceptions is to point out to a court of review an alleged erroneous ruling by the trial judge, adhered to by him after his attention was called to the matter by an exception taken at the time.

In the present case the bills of exceptions show no more than that questions were admitted or overruled or instructions were given to the jury to which defendant's counsel took exception. In some instances, but not in all, the grounds of

exception are mentioned. But (laying out of view the unauthenticated report of the trial, which is not by reference or otherwise made a part of the bills of exceptions) there is nothing to show that any of the rulings of the trial judge referred to was not entirely in accordance with the law. For instance, the fact that certain questions asked by defendant's counsel upon cross-examination of one of the state's witnesses were excluded as not proper cross-examination, and that defendant's counsel took exception to their exclusion, does not at all import that the questions were proper cross-examination and ought to have been admitted. The bills of exceptions should show at least sufficient of the direct examination of the witness to make it plain that the excluded questions were within the proper line of cross-examination. Indeed, it is the general rule that a bill of exceptions should contain a sufficient recital of the previous course of the trial to show what legal point was decided by the trial judge adverse to the contention of the plaintiff in error, and to show the basis of the contention that the ruling was erroneous. The bills of exceptions before us are in this respect wholly inefficient.

Counsel, however, have argued the cause as if the report of the trial were to be deemed a part of the bills of exceptions. And since it would be within the discretion of this court to allow a dismissal of the writ of error without prejudice, to the end that the plaintiff in error might apply to the court below to resettle the bills of exceptions, we have looked beyond the strict form of the bills for the purpose of determining whether such a motion to dismiss ought to be entertained.

There are seventeen assignments of error, and to the first, second, third and fifth of these the learned prosecutor of the pleas objects on the ground that they are multifarious; each of them being based upon several distinct exceptions. In *Associates* v. *Davison, 5 Dutcher* 415, 418, it was held by the Court of Errors and Appeals that while each exception must be distinct, several exceptions might be evidenced by a single bill, but that assignments of error, being in the nature of a pleading filed by the party complaining of the errors of the trial court, each assignment should be single and not multi-

farious. The objection taken for multifariousness is, we think, well founded; but as this might be obviated by an amendment we have for the present purpose disregarded it.

Looking, therefore, at the bills of exceptions as if the *verbatim* report of the trial were a part thereof, the case presented is as follows:

A. B., the person alleged to have been assaulted, was a decent girl less than eighteen years of age. According to her testimony, about seven o'clock in the evening of May 7th, 1906, she left her home in Jersey City and went by trolley car to a place in North Bergen township, in the county of Hudson, known as "Little Coney Island." On the way the car was delayed, so that she arrived at destination about half-past nine. Getting off the car she stood with the intention of going home on the next car, when she was accosted by the two men, Zeilman and Kraemer, who asked her to go to a public place of entertainment nearby and drink some soda. She accepted the invitation, went with them to the porch of the public house and remained there with them, drinking some lemon soda and two glasses of wine, until about half-past eleven. At this hour she left the place in company with the two men and walked up the Hudson Boulevard towards the trolley line on Bergenline avenue. After they had proceeded a little distance Kraemer seized her, and she put her arm around a tree and struggled and got free from him. Kraemer called out to Zeilman, "Don't let her go," and Zeilman ran after her up the boulevard and caught her by the cuff of the coat. She slipped away, and then Zeilman caught her by the hair, and he and Kraemer dragged her to a secluded place, where the two men assaulted her, being interrupted by the approach of three officers who came in response to her outcries. The officers took the girl and both men into custody, shortly after which Kraemer broke away and made his escape. The officers took the girl to the house of Judge Kennel, at New Durham. She gave to them an assumed name and a fictitious address. She testifies that she was excited and hysterical after the assault. Her testimony that she was raped was amply corroborated by the evidence of the three officers, and by that of a physician who examined her

on the following day. The officers, however, testified that when they came upon the scene in response to her outcries Kraemer was assaulting her, and Zeilman was standing about three feet away. Two of them also testified that shortly afterwards the girl remonstrated against the arrest of Zeilman, stating in effect that he was innocent.

For the defence there was no attempt to show that a rape was not committed upon the young woman. On the contrary, defendant was sworn as a witness in his own behalf, and testified in effect that Kraemer did commit a rape, but that he, Zeilman, did not participate in or connive at it, and on the contrary endeavored to prevent it.

The first exceptions relate to the exclusion of the following questions asked of the complaining witness, A. B., upon cross-examination:

"Q. Did you not say to the conductor on the motor car that these men (meaning the officers) were taking you against your will?

"Q. You were taken down before Judge Kennel?

"Q. What did you do before Judge Kennel?

"Q. After you were brought to Judge Kennel's what was done with you?

"Q. After leaving Kennel's where did they take you?

"Q. Where did you make the complaint?

"Q. Why did you refuse to answer? (referring to her refusal to answer the question 'What complaint did you make against Zeilman and Kraemer or either of them?').

"Q. Were you let go then after that complaint had been made?"

None of these questions was proper cross-examination, for the witness had been asked nothing upon her direct examination with respect to her ride with the officers to Judge Kennel's upon the trolley car, or with respect to the complaint made by her at Judge Kennel's or her movements afterwards. In rape cases it is commonly held that the state may show an outcry or a complaint made shortly afterwards, either as a part of the *res gestæ* or as corroborative of the testimony of the complaining witness to the effect that she was raped. Upon the same

theory it may be permissible for a defendant who denies the fact of rape to show the absence of such outcry or complaint as tending to show that the woman consented. But unless this can be made to appear by cross-examination within proper lines it must be shown by making the woman a witness for the defence, or by the testimony of other witnesses. As pointed out by this court in *State* v. *Brady,* 42 *Vroom* 360, in the prosecution of criminal offences the state does not assert a private right in any such sense as to be affected or bound by the statements or admissions of the person who was the victim of the criminal act. And, for the same reason, a prosecuting witness is not to be deemed a party to the cause or as representing the state in such a sense as to open such witness on cross-examination to a line of interrogation that extends beyond the testimony given on direct examination.

The next exceptions relate to questions overruled upon the cross-examination of Officer Beyer, who accompanied the girl to Judge Kennel's. The questions were designed to bring out what the girl said upon the trolley car, and were as follows: "Do you remember the girl asking the conductor to take her away from you?" and "Do you recollect her saying on the car, in the presence of the conductor and you and some other passengers, that there was nothing for you to take her down to the police station for, and that she had not done anything, or that she had no complaint to make, or words to that effect." These were properly overruled as not being cross-examination, there being nothing in the examination in chief that related to the occurrences upon the trolley car. If permissible to prove the declarations of the complaining witness it should have been done by calling the officer as a witness in behalf of the defendant.

The next exception relates to the overruling of a question asked upon direct examination of Recorder Kennel, who was called as a witness in behalf of the defence. The question was: "How did your wife come to go with her the next day?" We are unable to see how the witness' belief as to his wife's motive was at all admissible in evidence.

The next exception relates to a question admitted upon the

cross-examination of Mrs. Brillantine, a witness for the defence, who testified to the good reputation of Zeilman. Upon cross-examination she was asked whether she had ever heard anything against the reputation of A. B., the complaining witness. This, we think, was irrelevant and immaterial, as well as being improper cross-examination. The answer was: "No, sir, I have not; she is a stranger to me." We are unable to see how this error can have been in anywise harmful to the defendant, in view of the course of the trial and its outcome.

The next exception relates to a question asked by the prosecutor of one of the state's witnesses, a sister of A. B., who was recalled by defendant's counsel for further cross-examination, and was then asked on redirect examination whether since the occurrence in question the defendant or any member of his family had been at her home. She answered: "Yes, sir, his father," and was here interrupted by an objection based upon the ground that it was not proper cross-examination, and that it was irrelevant, immaterial and incompetent. The question was allowed, but it does not appear to have been further answered after this ruling; on the contrary, the question seems to have been waived. Without passing upon the question whether the ruling was improper, it is sufficient to say that in the event it was harmless.

The remaining exceptions relate to the charge of the trial judge. So far as they are specific they are based wholly on his comments upon the evidence. We are unable to find any legal error therein. The general exception to the charge taken under section 140 of the Criminal Procedure act (*Pamph. L.* 1898, *p.* 916), is not made the basis of any assignment of error pointing out legal error in any portion of the charge, as required by section 141.

There being, in our opinion, no reasonable ground for exercising the discretion of this court to permit a dismissal of the writ for the purpose of enabling the plaintiff in error to procure better bills of exceptions, and the bills of exceptions as returned showing no legal error, the judgment under review must be affirmed.